## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE ALLEN-FILLMORE | : | |
| 144 Pine Street | : | |
| Dover, DE 19901 | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| v. | : | **NO. 2:22-cv-01610-BMS** |
| | : | |
| UNITED STATES OF AMERICA | : | |
| c/o U.S. Office of Attorney General | : | |
| 950 Pennsylvania Avenue, NW | : | |
| Washington, DC 20530 | : | |
| and | : | |
| CITY OF PHILADELPHIA | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19102 | : | |
| and | : | |
| JOHN DOE (S) | : | |
| **Defendants** | : | |

## FIRST AMENDED CIVIL ACTION COMPLAINT

## PARTIES

1.      Plaintiff Jacqueline Allen-Fillmore (herein referred to as "Plaintiff") is an adult individual residing at the above listed address in the State of Delaware.

2.      Defendant United States of America is the United States Government, with that address listed above, and responsible for the operations of the Transportation Security Administration (hereinafter "TSA").

3.      Defendant City of Philadelphia (hereinafter "Defendant City") was and is a first class city and public entity located within the Commonwealth of Pennsylvania, with offices located in the Law Department - Claims Division, 1515 Arch Street, 14th Floor, Philadelphia, PA 19107.

1

4.     Defendant City owns, operates, and administers or is otherwise responsible for all aspects of the operation of Philadelphia International Airport (hereinafter "PHL").

5.     Defendant John Doe(s) is or may be a maintenance company or companies or corporations subcontracted or otherwise under contract by or for the City of Philadelphia to maintain the inside areas, specifically the floors, of Philadelphia International Airport in a safe manner for passersby and travelers.

## JURISDICTION AND VENUE

6.     Jurisdiction and venue are proper in the United States District Court for the Eastern District of Pennsylvania because this Court has exclusive jurisdiction over claims against the United States for money damages and/or personal injury caused by the negligent acts or omissions of any employee of the Government acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred.  28 USC § 1346 (b)(1).

7.     Additionally, this Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 for the following reasons:

a.   Plaintiff is a resident and citizen of the State of Delaware;

b.   Defendants are political entities and agencies of the Federal Government and of the Commonwealth of Pennsylvania;

c.   The acts and omissions giving rise to this action occurred in Philadelphia County, Pennsylvania;

d.   This Court has jurisdiction over events occurring in Philadelphia County, Pennsylvania;

e.   The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8.      Plaintiff has satisfied her duties and responsibilities under the Federal Tort Claims Act and has exhausted her remedies as demonstrated in the annexed Exhibit A.

9.      More than six months has passed since the notice of claim was presented to the Federal Government.

10.     No representative of the United States, its Attorney General, or the TSA ever contacted the Plaintiff or her counsel.

11.     As a result, Plaintiff has exhausted her administrative remedies and is entitled to file this lawsuit.

## FACTUAL AVERMENTS

12.     The preceding paragraphs are incorporated herein by reference as if fully set forth herein.

13.     On or about January 15, 2021, at approximately 9:30 a.m., Plaintiff was a business invitee at Philadelphia International Airport and possessed all the rights of a lawful business invitee.

14.     On the above date, Plaintiff traveled to PHL in order to fly to North Carolina to visit her family.

15.     At all times relevant hereto, Plaintiff was lawfully upon the premises of PHL.

16.     Plaintiff was required to pass through a TSA checkpoint.

17.     TSA is an agency within the Department of Homeland Security, which is a branch of the federal government of Defendant United States of America.

18.     Plaintiff approached the TSA security checkpoint located at Terminal D in PHL.

19.    Plaintiff removed her shoes to comply with TSA security regulations for airline passengers.

20.    Plaintiff was only wearing socks on her feet.

21.    Plaintiff was processed by TSA officers through the luggage scan and body scan areas at the checkpoint.

22.    Plaintiff was then caused to slip and fall on the slippery floor, a dangerous condition, located at TSA's checkpoint, and sustained serious injuries as more fully described below.

23.    Defendants United States of America, the City of Philadelphia, and John Doe Corporation (s) are each individually, jointly, and severally responsible for the safety of business invitees such as Ms. Fillmore, when they are required to walk in their socks on the slippery airport and checkpoint floor.

24.    The floor at the TSA checkpoint was covered at various locations by rubber mats.

25.    Upon information and belief, the rubber mats were not provided to avoid business invitees from slipping and falling.

26.    Upon information and belief, the mats were placed in a haphazard manner.

27.    Upon information and belief, the mats were placed in various locations at the discretion of one or more TSA employees.

28.    Upon information and belief, the mats did not cover the entirety of the slippery floor, where invitees would be expected to walk in their socks before retrieving their shoes.

29.    Upon information and belief, the mats were placed to facilitate screening of passengers and not for the safety of the passengers.

30.     Upon information and belief, the marble-type floors at the checkpoint were slippery whether due to foreign substances spilled on them or due to the manner in which they were created and maintained.

31.     Upon information and belief, no warnings were placed advising passengers of the slippery floor conditions.

32.     Upon information and belief, the floors at the checkpoint were not treated with a readily available commercial non-stick coating to prevent passengers from slipping while they were negotiating the checkpoint in socks.

33.     Upon information and belief, the floors at the checkpoint were regularly inundated with spills of various substances from passengers.

34.     Upon information and belief, the floors at the checkpoint were not properly cleaned and maintained in a regular and timely manner by the Defendants.

35.     Upon information and belief, the floors at the checkpoint were serviced by the Defendants in such a manner as to increase the risk that passengers would slip on the floors, while they were in their socks.

36.     Upon information and belief, no effort was made to avoid spills or slippery substances remaining on the slippery marble-type floors at the checkpoint.

37.     Upon information and belief, the Defendants had a duty to investigate whether the marble-type flooring at PHL was a slipping hazard for passengers walking in their socks.

38.     Following the 2006 Robert Reid "shoe bomber" incident, all travelers were required to remove their shoes at TSA checkpoints.

39.     At that point, upon information and belief, the Defendants were placed on notice and knew or should have known that the marble-type flooring presented a slipping hazard for passengers wearing only socks on their feet at security checkpoints.

40.     Upon information and belief, the marble-type flooring, its maintenance, and slippery characteristics were not addressed or altered in response to TSA's requirement that passengers walk on the flooring in their stocking feet.

41.     Despite knowledge of the above, the Defendants required business invitees to navigate the dangerous slippery marble-type floors of the TSA screening areas in their sock-clad feet, knowing full well that passengers were exposed to a risk of slipping and falling and injuring themselves.

## COUNT I
## JACQUELINE ALLEN-FILLMORE v. UNITED STATES OF AMERICA
### (Negligence)

42.     The preceding paragraphs are incorporated herein by reference as if fully set forth herein.

43.     The security checkpoint was maintained by employees of the United States of America's Transportation Security Administration (TSA) and was staffed with Transportation Security Officers (TSO's).

44.     Congress created the TSA after the terrorist attacks of September 11, 2001, with the enactment of the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001).

45.     Under that Act, TSOs perform screenings at TSA checkpoints in airports in the United States.  See 49 U.S.C. § 44901(a).

46.     At all times material hereto, Defendant United States Government was responsible for the acts, omissions, negligence and all conduct of TSA, its agents, employees, servants and workmen.

47.     At all times material hereto, TSA did own, possess, control, operate, supervise, maintain, and/or was responsible for allowing a dangerous condition to exist at its checkpoint, where Plaintiff was caused to slip and fall and sustain those injuries described below.

48.     Upon information and belief, TSA did own, possess, control, operate, supervise, maintain, and/or was otherwise responsible for the condition of the floor located at or near its security checkpoint.

49.     TSA and its agents are liable for personal injury caused by the negligent acts or omissions of any employee of the Government acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred.  28 USC § 1346 (b)(1).

50.     Here, were TSA a private business whose invitees were falling on its dangerous flooring, the business would be liable in tort to the Plaintiff.  The above statute dictates that TSA is similarly liable to the Plaintiff as any business owner would be for the negligent conduct described herein.

51.     TSA owed a duty to Plaintiff and all passengers to make sure through investigation, maintenance, surveillance, and supervision that the checkpoint could be navigated safely by passengers wearing socks.

52.     TSA breached that duty by failing to warn the Plaintiff of the slippery flooring.

7

53.     TSA breached that duty by failing to make sure that all areas of the checkpoint, where passengers would be in socks, were covered in rubber or other non-skid or slip resistant material.

54.     TSA breached its duty to Plaintiff by failing to make sure that the marble-like flooring at its Checkpoint was coated with a non-stick coating.

55.     TSA breached its duty to Plaintiff by failing to make sure that all areas of the checkpoint, where passengers would be in socks, covered entirely by rubber non-slip floor mats.

56.     TSA breached its duty to Plaintiff by haphazardly placing rubber floor mats that were intended for the benefit of the TSA personnel or to enhance screening, but ignored the safety of the plaintiff and other invitees.

57.     The aforementioned incident was the result of the negligence of the TSA and its agents, servants, workmen, and/or employees and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

58.     TSA knew or in the exercise, of reasonable care should have known of the slippery floor.

59.     TSA had a duty to inspect, maintain, warn of and/or otherwise correct the dangerous condition of the slippery floor.

60.     TSA breached its duty to the Plaintiff and Plaintiff was injured as a result.

61.     At all pertinent times, Defendant United States of America and TSA acted by and through its respective agents, employees, servants, and/or workmen who were acting within the course and scope of their employment and authority.

62.     The aforementioned incident and the resulting injuries and/or damages sustained by Plaintiff directly and proximately resulted from the negligence of Defendant United States of America and TSA, which conduct consisted of, but was not limited to, the following:

a.      failing to place a mat or non-skid material along the entire course of the checkpoint where business invitees would walk in their socks;

b.      failing to prevent pedestrians from walking in the area where the dangerous condition existed;

c.      failing to warn the Plaintiff of the hazardous condition and/or otherwise dangerous condition;

d.      failing to detect or recognize the existence of a dangerous condition in a highly trafficked area;

e.      failing to correct or otherwise remedy the aforesaid dangerous/hazardous condition after being put on notice of same;

f.      failing to maintain the premises and keep it in a safe condition so as not to constitute a snare, trap, obstruction, hazard or impediment to its visitors and people such as Plaintiff lawfully walking on the premises;

g.      failing to properly and adequately inspect said area to ascertain the existence of the dangerous and hazardous condition which existed;

h.      failing to properly and adequately correct the hazardous, dangerous and unsafe condition of the area;

i.      failing to exercise due care under the circumstances;

j.      being otherwise negligent as may more fully be revealed during discovery or at the time of trial of this matter;

k.      disregarding the rights, safety, and the position of the Plaintiff, who was a business invitee and failing to use the required degree of due care;

l.      failing to maintain the premises used by pedestrians in a condition that would protect and safeguard persons such as the Plaintiff lawfully situated thereon;

63. As a direct and proximate result of the fall, Plaintiff suffered serious and permanent impairment of a bodily function, serious bodily injuries requiring medical care and treatment, including, but not limited to:

      a.    Fracture of the right knee at the tibial plateau requiring surgery;

      b.    Scarring of the knee following surgery;

      c.    Arthritis of the right knee;

      d.    Pain including a severe shock to her nerves and nervous system and injury to her cervical, thoracic and lumbar spine, and more particularly as detailed by her physicians, including neurological damage as well as physical pain;

      e.    Plaintiff has suffered and will continue to suffer in the future great pain and agony all of which appear to be permanent in nature;

      f.    The need for rehabilitation of various parts of her body;

      g.    Such other pain, damages and losses as will be revealed in Plaintiff's medical records.

64. As a direct result of the fall, Plaintiff has been unable to undertake her usual and customary duties and activities and believes that she will continue to suffer impairments and disabilities into the future.

65. As a direct result of the fall, Plaintiff was forced to miss extended time from her usual activities.

66. As a further result of the fall, Plaintiff has or may be obliged to receive and undergo reasonable and necessary medical treatments and rehabilitative services for the injuries she suffered and may be obliged to expend such sums or to incur such expenditures for an indefinite time in the future.

67. As a direct and proximate result of the tortious conduct of TSA, Plaintiff has suffered and in the future will continue to suffer great pain, agony, and a diminution of her

ability to enjoy life and life's pleasures, including but not limited to permanent impairment of her bodily functions.

68.     As a further result of the tortious conduct of the United States of America, through its agency, TSA, Plaintiff has been and may in the future be compelled to expend a large sum of money for physicians, imaging, tests, monitoring, physical therapy, and the like, in an effort to cure herself of her injuries and/or suffering, which were brought about as a result of the incident.

69.     All of Plaintiff's injuries, damages and/or losses may be permanent in nature.

**WHEREFORE**, Plaintiff Jacqueline Fillmore respectfully requests that this Honorable Court enter judgment in her favor and against Defendant United States of America an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory, economic, and non-economic damages, in addition to other damages permitted by law.

**COUNT II**
**JACQUELINE ALLEN- FILLMORE v.  CITY OF PHILADELPHIA**
**(Negligence)**

70.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

71.     At all times material hereto, Defendant City of Philadelphia and PHL did own, possess, control, operate, supervise, and maintain the flooring at its TSA security checkpoint in Terminal D, where Plaintiff was caused to slip and fall and sustain permanent injuries, as described below.

72.     At all times material hereto, Defendant City of Philadelphia and PHL were responsible for allowing a dangerous condition to exist at the TSA security Checkpoint.

73.     Upon information and belief, PHL had both actual and constructive notice of the dangerous condition of its real property.

74.     Upon information and belief, PHL had been on notice of the dangerous and defective condition of its flooring for an extended period of time and a sufficient period of time to remedy the dangerous condition.

75.     Following the shoe bomber incident, PHL had ample time in which to apply a slip-resistant coating to PHL's floors and failed to do so.

76.     As a result, PHL's floors were defective in that their slipperiness presented a known and unavoidable hazard to business invitees.

77.     The City of Philadelphia was required to investigate this defective condition and should have been aware that multiple slip resistant solutions existed for floors such as those in use by TSA at PHL, but failed to take such measures to make passengers safe.

78.     Defendant City of Philadelphia and PHL were responsible for the safe condition of the flooring located at Terminal D by security checkpoint.

79.     The aforementioned incident was the result of the negligence of the Defendant City of Philadelphia and PHL and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

80.     Defendant City of Philadelphia and PHL knew or in the exercise, of reasonable care should have known that the floor at the security checkpoints was slippery and posed a danger or passengers wearing only socks on their feet.

81.     Defendant City of Philadelphia and PHL had a duty to inspect, maintain, warn of and/or otherwise correct the condition of the slippery floor.

12

82.     PHL did not warn the Plaintiff or other passengers of the dangerous slipperiness of the flooring that they were forced to walk over.

83.     Defendant City of Philadelphia and PHL breached its duty to the Plaintiff and Plaintiff was injured as a result.

84.     At all pertinent times, Defendant City of Philadelphia and PHL acted by and through its respective agents, employees, servants, and/or workmen, who were acting within the course and scope of their employment and authority.

85.     The aforementioned incident and the resulting injuries and/or damages sustained by Plaintiff directly and proximately resulted from the negligence of Defendant City of Philadelphia and PHL, which conduct consisted of, but was not limited to, the following:

        a.     failing to place a mat or non-skid material along the entire course of the checkpoint where business invitees would walk in their socks;

        b.     failing to prevent pedestrians from walking in the area where the dangerous condition existed;

        c.     failing to warn the Plaintiff of the hazardous condition and/or otherwise dangerous condition;

        d.     failing to detect or recognize the existence of a dangerous condition in a highly trafficked area;

        e.     failing to correct or otherwise remedy the aforesaid dangerous/hazardous condition after being put on notice of same;

        f.     failing to maintain the premises and keep it in a safe condition so as not to constitute a snare, trap, obstruction, hazard or impediment to its visitors and people such as Plaintiff lawfully walking on the premises;

        g.     failing to properly and adequately inspect said area to ascertain the existence of the dangerous and hazardous condition which existed;

        h.     failing to properly and adequately correct the hazardous, dangerous and unsafe condition of the area;

        i.     failing to exercise due care under the circumstances;

    j.      being otherwise negligent as may more fully be revealed during discovery or at the time of trial of this matter;

    k.      disregarding the rights, safety, and the position of the Plaintiff, who was a business invitee and failing to use the required degree of due care;

    l.      failing to maintain the premises used by pedestrians in a condition that would protect and safeguard persons such as the Plaintiff lawfully situated thereon;

86.    As a direct and proximate result of the fall, Plaintiff suffered serious and permanent impairment of a bodily function, serious bodily injuries requiring medical care and treatment, including, but not limited to:

    a.      Fracture of the right knee at the tibial plateau requiring surgery;

    b.      Scarring of the knee following surgery;

    c.      Arthritis of the right knee;

    d.      Pain including a severe shock to her nerves and nervous system and injury to her cervical, thoracic and lumbar spine, and more particularly as detailed by her physicians, including neurological damage as well as physical pain;

    e.      Plaintiff has suffered and will continue to suffer in the future great pain and agony all of which appear to be permanent in nature;

    f.      The need for rehabilitation of various parts of her body.

87.    Such other pain, damages and losses as will be revealed in Plaintiff's medical records.

88.    As a direct result of the fall, Plaintiff has been unable to undertake her usual and customary duties and activities since the accident and believes that she will continue to suffer impairments and disabilities into the future.

89.    As a direct result of the fall, Plaintiff was forced to miss extended time from her usual activities.

90.     As a further result of the fall, Plaintiff has or may be obliged to receive and undergo reasonable and necessary medical treatments and rehabilitative services for the injuries she suffered and may be obliged to expend such sums or to incur such expenditures for an indefinite time in the future.

91.     As a direct and proximate result of the tortious conduct of Defendant City of Philadelphia and PHL, Plaintiff has suffered and in the future will continue to suffer great pain, agony, and a diminution of her ability to enjoy life and life's pleasures, including but not limited to serious impairment of her bodily functions.

92.     As a further result of the tortious conduct of Defendant City of Philadelphia as described above, Plaintiff has been and will in the future be compelled to expend a large sum of money for physicians, surgery, imaging, tests, monitoring, physical therapy, and the like, in an effort to permanently and thoroughly cure herself of her injuries and/or suffering, which were brought about as a result of the incident.

93.     As further result of the tortious conduct of Defendant City of Philadelphia, Plaintiff has incurred in the past and will incur into the future other financial expenses or losses, which do or will exceed the amount which she may be otherwise entitled to recover.

94.     As a further result of the tortious conduct of Defendant City of Philadelphia, Plaintiff has become unable to perform her usual and customary activities in the manner to which she was accustomed before this accident.

95.     All of Plaintiff's injuries, damages and losses are or may be permanent in nature.

96.     A Tort Claims Notice was sent to the City of Philadelphia on April 8, 2021, which is annexed hereto as Exhibit B.

97.     A Tort Claims Notice was sent to PHL on May 14, 2021, which is annexed hereto as Exhibit C.

98.     Liability against the Defendant City of Philadelphia is imposed by virtue of 42 Pa. C.S. 8542(b)(3), et seq. and specifically the real property exception to the Governmental Immunity Political Subdivision Tort Claims Act.

99.     Plaintiff sustained a permanent injury and permanent impairment of a bodily function in her affected knee.

100.    Plaintiff expended over $5,000.00 (five thousand dollars) in medical bills.

101.    Plaintiff suffers from permanent scarring due to the injury she suffered.

**WHEREFORE,** Plaintiff Jacqueline Allen-Fillmore respectfully requests that this Honorable Court enter judgment in her favor and against Defendant City of Philadelphia in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory, economic, and non-economic damages, in addition to other damages permitted by law.

### COUNT III
### JACQUELINE ALLEN-FILLMORE v. JOHN DOE (S)
### (Negligence)

102.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

103.    Upon information and belief, Defendant John Doe(s) were independent contractors or corporations, which were responsible for the safe condition of the floor located at or near TSA checkpoints in Terminal D at PHL.

104.    Defendant John Doe(s) owed a duty to Plaintiff and all passengers to make sure through investigation, maintenance, surveillance, and supervision that the checkpoint could be navigated safely by passengers wearing socks.

105.    John Doe(s) breached that duty by failing to warn the Plaintiff of the slippery flooring.

106.    John Doe(s) breached that duty by failing to be aware of the slippery flooring at the TSA security checkpoint.

107.    John Doe(s) breached that duty by failing to properly and diligently clean and maintain the flooring at the TSA Checkpoints.

108.    John Doe(s) breached that duty by failing to make sure that all areas of the checkpoint, where passengers would be in socks, were covered in rubber or other non-skid or slip resistant material.

109.    John Doe(s) breached its duty to Plaintiff by failing to make sure that the marble-like flooring at its Checkpoint was coated with a non-skid coating or covered by rubber non-slip floor mats.

110.    John Doe(s) breached its duty to Plaintiff by failing to make sure that all areas of the checkpoint, where passengers would be in socks, were covered in rubber mats, rather than selectively placing mats in a haphazard manner.

111.    The aforementioned incident was the result of the negligence of the John Doe(s) and its agents, servants, workmen, and/or employees and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

112.    Defendant John Doe(s) knew or in the exercise, of reasonable care should have known of the slippery floor.

113.    Defendant John Doe(s) had a duty to inspect, maintain, warn of and/or otherwise correct the dangerous condition of the slippery floor.

17

114.    Defendant John Doe(s) breached its duty to the Plaintiff and Plaintiff was injured as a result.

115.    At all pertinent times, Defendant John Doe(s) acted by and through its respective agents, employees, servants, and/or workmen who were acting within the course and scope of their employment and authority.

116.    The aforementioned incident and the resulting injuries and/or damages sustained by Plaintiff directly and proximately resulted from the negligence of John Doe(s), which conduct consisted of, but was not limited to, the following:

  a.    failing to place a mat or non-skid material along the entire course of the checkpoint where business invitees would walk in their socks;

  b.    failing to prevent pedestrians from walking in the area where the dangerous condition existed;

  c.    failing to warn the Plaintiff of the hazardous condition and/or otherwise dangerous condition;

  d.    failing to detect or recognize the existence of a dangerous condition in a highly trafficked area;

  e.    failing to correct or otherwise remedy the aforesaid dangerous/hazardous condition after being put on notice of same;

  f.    failing to maintain the premises and keep it in a safe condition so as not to constitute a snare, trap, obstruction, hazard or impediment to its visitors and people such as Plaintiff lawfully walking on the premises;

  g.    failing to properly and adequately inspect said area to ascertain the existence of the dangerous and hazardous condition which existed;

  h.    failing to properly and adequately correct the hazardous, dangerous and unsafe condition of the area;

  i.    failing to exercise due care under the circumstances;

  j.    being otherwise negligent as may more fully be revealed during discovery or at the time of trial of this matter;

18

> k.  disregarding the rights, safety, and the position of the Plaintiff, who was a business invitee and failing to use the required degree of due care;
>
> l.  failing to maintain the premises used by pedestrians in a condition that would protect and safeguard persons such as the Plaintiff lawfully situated thereon;

117.  As a direct and proximate result of the fall, Plaintiff suffered serious and permanent impairment of a bodily function, serious bodily injuries requiring medical care and treatment, including, but not limited to:

> a.  Fracture of the right knee at the tibial plateau requiring surgery;
>
> b.  Scarring of the knee following surgery;
>
> c.  Arthritis of the right knee;
>
> d.  Pain including a severe shock to her nerves and nervous system and injury to her cervical, thoracic and lumbar spine, and more particularly as detailed by her physicians, including neurological damage as well as physical pain;
>
> e.  Plaintiff has suffered and will continue to suffer in the future great pain and agony all of which appear to be permanent in nature;
>
> f.  The need for rehabilitation of various parts of her body;
>
> g.  Such other pain, damages and losses as will be revealed in Plaintiff's medical records.

118.  As a direct result of the fall, Plaintiff has been unable to undertake her usual and customary duties and activities and believes that she will continue to suffer impairments and disabilities into the future.

119.  As a direct result of the fall, Plaintiff was forced to miss extended time from her usual activities.

120.  As a further result of the fall, Plaintiff has or may be obliged to receive and undergo reasonable and necessary medical treatments and rehabilitative services for the injuries

she suffered and may be obliged to expend such sums or to incur such expenditures for an indefinite time in the future.

121.    As a direct and proximate result of the tortious conduct of John Doe(s), Plaintiff has suffered and in the future will continue to suffer great pain, agony, and a diminution of her ability to enjoy life and life's pleasures, including but not limited to permanent impairment of her bodily functions.

122.    As a further result of the tortious conduct of Defendant John Doe(s) as described above, Plaintiff has been and may in the future be compelled to expend a large sum of money for physicians, imaging, tests, monitoring, physical therapy, and the like, in an effort to cure herself of her injuries and/or suffering, which were brought about as a result of the incident.

123.    All of Plaintiff's injuries, damages and/or losses may be permanent in nature.

**WHEREFORE,** Plaintiff Jacqueline Allen-Fillmore respectfully requests that this Honorable Court enter judgment in her favor and against Defendant John Doe(s) in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory, economic, and non-economic damages, in addition to other damages permitted by law.

**NEUWIRTH LAW OFFICE, LLC**

Date:   June 6, 2022          By:      *Andrew Neuwirth /s/*
                                        Andrew T. Neuwirth, Esquire
                                        Attorney for Plaintiffs
                                        Atty. ID No. 310079
                                        2200 Renaissance Blvd., Suite 270
                                        King of Prussia, PA 19406
                                        Tel: 215-259-3687
                                        Fax: 215-253-5816
                                        Email: andrew@neuwirthlaw.com

# EXHIBIT A



# NEUWIRTH LAW OFFICE, LLC
### A PERSONAL INJURY LAW FIRM

April 8, 2021

**Via fax (571) 227-1904 & Certified Mail**

TSA Claims Management Branch
601 South 12th Street – TSA 9
Arlington, VA 20598-6009

| RE: | **My Client:** | **Jacqueline Darden Fillmore, a.k.a. Jacqueline Darden or Jacqueline Darden Allen** |
| --- | **Date of Injury:** | **1/15/2021** |
| | **Location of Accident:** | **Security Checkpoint of Terminal D, Philadelphia International Airport** |

Dear Sir/Madam:

Please be advised that I represent Jacqueline D. Fillmore for injuries sustained in a fall that occurred on January 15, 2021 at the Philadelphia International Airport.

In accordance with the Federal Tort Claims Act and/or 42 Pa. C.S.A. §5522, we are serving you with a completed Claim Form SF 95 – Claim for Damage, Injury, or Death.

A copy of this Claim Form SF 95 was also served on the Office of Attorney General.

Please have this matter assigned to an investigator and/or claims representative with a request that they contact this office to further discuss.

Thank you for your attention.

Sincerely,

*Andrew Neuwirth /s/*
Andrew T. Neuwirth, Esq.

ATN/sg
Encl.

2200 Renaissance Blvd., Suite 270 ■ King of Prussia, PA 19406 ■ T 215.259.3687 ■ F 215.253.5816

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: Claims Management Branch TSA(TSA -9) 601 South 12th Street Arlington, VA 20598-6009<br><br>571.227.1300 tsaclaimsoffice@tsa.dhs.gov | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse.) Number, Street, City, State and Zip code.<br><br>Jacqueline Darden Fillmore, aka Jacqueline Darden or Jacqueline Allen 144 Pine Street Dover, DE 19901 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>4/12/1952 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>1/15/2021 - Friday | 7. TIME (A.M. OR P.M.)<br>9:30 a.m. |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Ms. Fillmore was required to remove her shoes at the security checkpoint at Terminal D at the Philadelphia International Airport (PHL) for a departing flight. Knowing customers would be in socks or stockings, TSA, Philadelphia International Airport, and others failed to prevent a tripping or slipping hazard on its flooring. TSA, Philadelphia International Airport, and the City, State and Federal government failed to ensure mats were placed to prevent slipping and falls and/or failed to apply a non-stick, non-skid floor sealant, and/or otherwise failed to keep the floor safe for Claimant.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

    PHL Terminal D - TSA checkpoint

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

    PHL Terminal D - TSA checkpoint has unsafe flooring

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

    Tibial plateau fracture requiring surgery and in-patient rehabilitation.

| 11. | | WITNESSES | |
|---|---|---|---|
| | NAME | | ADDRESS (Number, Street, City, State, and Zip Code) |
| Investigation in ongoing. To be provided. | | | |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>Not applicable | 12b. PERSONAL INJURY<br>$600,000.00 | 12c. WRONGFUL DEATH<br>Not applicable | 12d. TOTAL (Failure to specify may cause forfeiture of your rights).<br>$600,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br><br>    , Attorney for Claimant | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>215-259-3687 | 14. DATE OF SIGNATURE<br>4/8/21 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?  [ ] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  [X] No

Not applicable

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  [ ] Yes  [ ] No   17. If deductible, state amount.

Not applicable

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain those facts).

Not applicable

19. Do you carry public liability and property damage insurance?  [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  [ ] No

Not applicable

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK



**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

*Post Office Box 888*
*Benjamin Franklin Station*
*Washington, D.C. 20044*

GKJ:HLSwann:hls
157-0-32-55

May 10, 2021

Mr. Andrew T. Neuwirth
Neuwirth Law Office, LLC
A Personal Injury Law Firm
2200 Renaissance Boulevard
Suite 270
King of Prussia, PA   19406

Re:   <u>Duplicate Administrative Tort Claims of Jacqueline Darden Fillmore</u>

Dear Mr. Neuwirth:

This is in response to your client's duplicate administrative tort claims dated April 8, 2021, which you submitted to the Department of Justice (Department).   The Department received the two claims on April 19, 2021, and April 20, 2021, respectively.

Because your client's duplicate claims concern an alleged tort involving the Transportation and Security Administration (TSA), within the Department of Homeland Security, I am forwarding the claims to that component.   All further communication on this matter should be directed to the TSA at the address listed below.

Very truly yours,

HOPE L. SWANN
Paralegal Specialist
Civil Division, Torts Branch

cc:   Ms. Mary Pendleton
      Claims Management Office (TSA-9)
      Transportation and Security Administration
      601 South 12th Street, 8th Floor
      Arlington, VA   20598

**EXHIBIT B**



NEUWIRTH LAW OFFICE, LLC
A PERSONAL INJURY LAW FIRM

April 8, 2021

**Via First Class Mail & Certified Mail/RRR**

City of Philadelphia
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
Attn: Risk Management Division/Claims Unit

RE:   **My Client:**           **Jacqueline Darden Fillmore, a.k.a. Jacqueline Darden or Jacqueline Darden Allen**
      **Date of Injury:**      **1/15/2021**
      **Location of Accident:** **Philadelphia International Airport**

Dear Sir/Madam:

Please be advised that I represent Jacqueline D. Fillmore for injuries sustained in a fall that occurred on January 15, 2021 at the Philadelphia International Airport.  In accordance with 42 Pa. C.S.A. §5522, the particulars of this incident are as follows:

1. Person injured and to whom cause of action has accrued: **Jacqueline D. Fillmore**

2. Address of person injured: **144 Pine Sreet, Dover, DE 19901**

3. Date of Birth of person injured: **4/12/1952**

4. Date and Hour of Accident: **1/15/21 at 9:30 AM**

5. Location of Accident: **Terminal D, TSA Checkpoint, Philadelphia International Airport**

6. Treating Physician: **Dr. Stephen Manifold of First State Orthopaedics**

7. Injuries: **Tibial plateau fracture with surgery**

8. Cause of Accident: **Failure to maintain safe premises, failure to use non-skid devices or applications at point of known danger, and failure to require safety measures.  Flooring was defectively slippery.  Floor mats not used where needed.**

In addition to this letter, we are also enclosing a completed General Claim Information Form and Bodily Injury Claim Form.

Kindly assign this matter to an investigator and/or claims representative with a request that they contact this office to further discuss this case.

Thank you for your attention.

Sincerely,

*Andrew Neuwirth /s/*
Andrew T. Neuwirth, Esq.

ATN/sg
Encl.

# EXHIBIT C



# NEUWIRTH LAW OFFICE, LLC
### A PERSONAL INJURY LAW FIRM

May 14, 2021

**Via First Class Mail & Certified Mail/RRR**

Philadelphia International Airport
Division of Aviation Administrative Offices
Terminal D/E 3rd floor
8500 Essington Ave.
Philadelphia, PA 19153

> **RE:  My Client:**       **Jacqueline Darden Fillmore, a.k.a. Jacqueline Darden**
> **or Jacqueline Darden Allen**
> **Date of Injury:**       **1/15/2021**
> **Location of Accident:**       **Philadelphia International Airport**

Dear Sir/Madam:

Please be advised that I represent Jacqueline D. Fillmore for injuries sustained in a fall that occurred on January 15, 2021 at the Philadelphia International Airport. In accordance with 42 Pa. C.S.A. §5522, the particulars of this incident are as follows:

1. Person injured and to whom cause of action has accrued: **Jacqueline D. Fillmore**

2. Address of person injured: **144 Pine Sreet, Dover, DE 19901**

3. Date of Birth of person injured: **4/12/1952**

4. Date and Hour of Accident: **1/15/21 at 9:30 AM**

5. Location of Accident: **Terminal D, TSA Checkpoint, Philadelphia International Airport**

6. Treating Physician: **Dr. Stephen Manifold of First State Orthopaedics**

7. Injuries: **Tibial plateau fracture with surgery**

8. Cause of Accident: **Failure to maintain safe premises, failure to use non-skid devices or applications at point of known danger, and failure to require safety measures. Flooring was defectively slippery. Floor mats not used where needed.**

Kindly assign this matter to an investigator and/or claims representative with a request that they contact this office to further discuss this case.

Thank you for your attention.

Sincerely,

*Andrew Neuwirth /s/*
Andrew T. Neuwirth, Esq.

ATN/sg