IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE ALLEN-FILLMORE : | | CIVIL ACTION |
| : | | |
| Plaintiff : | | |
| v. : | | |
| : | | |
| : | | NO. 22-1610 |
| UNITED STATES OF AMERCA, : | | |
| CITY OF PHILADELPHIA, et al. : | | |
| : | | |
| Defendants. : | | |

**MEMORANDUM**

Perez, M.                                                                                                           August 30, 2023

  Plaintiff Jacqueline Allen-Fillmore has sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), for personal injuries she sustained when she slipped and fell passing through a TSA security checkpoint at the Philadelphia International Airport. The Government moves to dismiss the action for lack of subject-matter jurisdiction pursuant to 28 U.S.C. §12(b)(1) or, if jurisdiction exists, seeks summary judgment in its favor. For the reasons that follow, this Court finds: (1) the discretionary function exception does not bar Plaintiff's cause of action against the Government; and (2) there remain genuine issues of material fact best resolved by a jury. As such, this Court has subject-matter jurisdiction and the Government's motion will be denied on both grounds.

  I.  **APPLICABLE LEGAL STANDARDS**

  The Government's first argument posits that this Court lacks subject-matter jurisdiction. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a district court must first determine whether the motion constitutes a *facial* or *factual* challenge to the complaint. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d

1

884, 891 (3d Cir. 1977). In cases involving a factual challenge such as the present matter, the trial court may consider affidavits, depositions, and testimony to resolve factual issues relevant to the question of jurisdiction. *Gotha v. United States,* 115 F.3d 176 (3d Cir. 1997). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, a plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891. Further analysis below will discuss whether the discretionary function exception applies in this matter, which determines whether this Court has subject matter jurisdiction.[1]

The Government next argues that even if this Court has subject-matter jurisdiction over the suit, it is entitled to summary judgement as a matter of law. Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ, P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed.R.Civ.P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id* at 324.

---

[1] Plaintiff has the burden of showing that her claims fall within the scope of the FTCA's waiver of government immunity, *In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 361 (3d Cir.2001), but " '[t]he United States has the burden of proving the applicability of the discretionary function exception.' " *Cestonaro v. United States,* 211 F.3d 749, 756 n. 5 (3d Cir.2000) (internal citations omitted).

## II.     FACTUAL BACKGROUND

On January 15, 2021, Plaintiff Jacqueline Allen-Fillmore traveled to the Philadelphia International Airport ("PHL") for a flight to North Carolina to visit her family. As is the case for most airline passengers, Ms. Allen-Fillmore was instructed to remove her shoes before passing through the security checkpoint administered by the Transportation Security Administration ("TSA"). She complied with all directives and instructions provided by TSA personnel working that day. The TSA checkpoint was set up with rubber mats configured in a straight line through the area where passengers proceed through the body scanner. The remaining floor at the checkpoint consists of the same terrazzo flooring that is installed throughout much of the airport. There are no mats leading from the body scanner to the x-ray belt where shoeless travelers are meant to retrieve their shoes and other belongings.

After placing her belongings on the x-ray scanning belt, Ms. Allen-Fillmore proceeded through the checkpoint area wearing her socks. The checkpoint did not display any cautionary signs warning of slippery conditions on the terrazzo flooring for shoeless passengers. Plaintiff remained shoeless as she continued through the body scanning machine, walking on the rubber mats without issue. Video surveillance of the incident shows Plaintiff slip the moment she stepped off the mat onto the terrazzo flooring to retrieve her belongings. Her left foot slid across the slippery floor, and she fell, fracturing her knee. Plaintiff underwent surgery, which required the placement of permanent hardware in her leg.

Depositions were taken of TSA Director William Myers and Transportation Security Officer ("TSO") Dominique Brown and portions of their testimony were made a part of the record before this Court. Director Myers expressed concern over the slippery nature of the terrazzo flooring at PHL for travelers navigating through TSA security checkpoints in their

socks. Indeed, he testified that *"unless you're being cautious or careful, you always have the potential to have someone slip or fall or trip."* (Myers Dep. 24:18-20). Neither Myers nor Brown had ever received training on flooring safety, code requirements, or how to reduce slip and fall incidents.

Both TSA representatives testified that prior to Ms. Allen-Fillmore's injury, there had been several slip and fall incidents at TSA checkpoints at PHL, including the fall at issue in *Menkin v. United States*, 99 F. Supp. 3d 577, 580 (E.D. Pa. 2015).[2] (Myers Dep. at 6; Brown Dep. at 11). During her time working as a TSO at the Philadelphia Airport, Agent Brown witnessed numerous passengers fall or nearly fall on the terrazzo flooring during security screenings. (Brown Dep at 11).

The terrazzo flooring at PHL has never been treated with a slip resistant sealer, though this precaution had been discussed. (Stressman Dep. at 22-23; Myers Dep. at 11). Despite internal TSA discussions and conversations with the City concerning the problem, virtually no steps were taken to improve the slippery condition of the terrazzo flooring for shoeless travelers making their way through security. (Myers Dep. at 11).

## III.   THE DISCRETIONARY FUNCTION EXCEPTION

"The United States of America, as a sovereign, is immune from suit unless it consents to be sued." *Merando v. United States,* 517 F.3d 160, 164 (3d Cir. 2008) (internal citations omitted). Under the FTCA, the federal government waives its sovereign immunity and may be liable for acts of negligence under state law to the same extent that a private individual under similar circumstances would be liable. 28 U.S.C. § 1346. However, there are exceptions to the

---

[2] The Plaintiff in *Menkin* also sued the United States under the FTCA after sustaining injuries from a fall at a PHL security checkpoint. Plaintiff was an elderly woman who was navigating the checkpoint in her socks without the use of her cane, which she was asked to surrender by TSA personnel for screening. *Id.*

FTCA's waiver of sovereign immunity. Section 2680(a), known as the discretionary function exception, bars tort claims filed under the FTCA which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused." 28 U.S.C. § 2680.

To determine whether the discretionary function exception bars a cause of action under the FTCA, courts apply a two-prong test. *Merando*, 517 F.3d at 164 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). This Court will examine whether TSA employees were engaged in conduct that was (1) discretionary and (2) policy-driven. To examine the first prong—the nature of the challenged conduct—"a court must determine whether the act giving rise to the alleged injury . . . involves an 'element of judgment or choice.'" *Gaubert* at 322-323 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536 (1988)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.' " *Id.* (quoting *Berkovitz,* 486 U.S. at 536). The Supreme Court has elaborated:

> [I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

*Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274 (internal citation omitted). If the government employee's conduct complied with a mandate, the analysis ends, and the government is immune from suit. If, instead, the government's challenged conduct involved an element of choice or

discretion, the court moves to the second prong. Courts are then required to assess whether the challenged conduct "is of the kind that the discretionary function was designed to shield." *Gotha v. United States,* 115 F.3d 176 , 179 (3d Cir. 1997) (*citing Berkovitz,* 486 U.S. at 536). The exception only immunizes the government if the action it is based on a permissible exercise of policy-related judgment. As *Gaubert* explained:

> [t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Id.* at 325 n. 7. In carving out the discretionary function exception, Congress sought to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Baer v. United States,* 722 F.3d 168, 172 (3d Cir. 2013) (citation and internal quotation omitted). The exception serves to "'protect the Government from liability that would seriously handicap efficient government operations.'" *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814 (1984) citing *United States v. Muniz*, 374 U.S. 150, 163 (1963).

If both prongs of the test are met, a plaintiff's claim under the FTCA will fail. Said another way, "[i]f governmental conduct falls within the discretionary function exception, it is irrelevant whether the United States . . . acted negligently." *U.S. Fidelity & Guar. Co. v. United States,* 837 F.2d 116, 120 (3d Cir. 1988). The Government bears the burden of establishing that the exception applies. *S.R.P. ex rel. Abunabba v. United States,* 676 F.3d 329, 333 (3d Cir. 2012). The Supreme Court has cautioned that "unduly generous interpretations of the exception

6

run the risk of defeating the central purpose of the statute." *Kosak v. United States,* 465 U.S. 848, 853 n.9 (1984). If the discretionary function exception applies, then the trial Court lacks subject matter jurisdiction to hear the case.

Before this Court engages in the two-prong test to determine if the discretionary function exception applies, we must first identify what conduct Plaintiff is challenging. *Merando,* 517 F.3d at 165; *S.R.P.,* 6766 F.3d at 332. Defendant asserts that Ms. Allen-Fillmore's negligence claim against it is barred by the discretionary function doctrine because Plaintiff's claim fundamentally challenges the TSA's imposition of a discretionary shoe removal policy at airport security checkpoints. Defendant contends that the FTCA provides exception for the TSA officer's conduct here because Plaintiff's claim is premised on their performance of discretionary duties. This Court rejects the Government's characterization of the conduct at issue as being the TSA's shoe-removal policy at large. The Government's framing of the pertinent conduct does not accurately reflect the facts alleged in Plaintiff's Complaint.

The relevant conduct at issue for purposes of the discretionary function analysis concerns the safety of TSA security checkpoints for passengers navigating the slippery terrazzo flooring at PHL in their socks. The failure to warn shoeless air travelers of slippery conditions or implement any simple safeguards to prevent slip and falls is the conduct contested by the Plaintiff in this matter.[3]

---

[3] See *Menkin v. United States*, 99 F. Supp. 3d 577, 580 (E.D. Pa. 2015) (defining the conduct at issue in another EDPA decision involving a slip and fall incident at the Philadelphia Airport as "the operation of an airport security screening checkpoint without offering or providing [plaintiff] with ambulatory assistance after disallowing her to use her cane.")

## A. The lack of safety measures undertaken by the TSA regarding PHL security checkpoint flooring for shoeless passengers is governmental conduct that involves an element of judgment or choice.

Plaintiff argues that "the discretionary function exception does not apply to this case because the flooring at TSA Checkpoint D did not comply with local and national building codes and violated specific policies laid out in TSA's Checkpoint Design Guide." (ECF No. 38 at 9). In short, Plaintiff contends that disregarding a mandate can hardly be called an act of discretion. This Court agrees with Plaintiff's contention that TSA security checkpoints "must meet all local building, mechanical, and OSHE code requirements." (ECF No. 38 at 3; 38-1 Ex. G). However, this Court is unconvinced that, together, these safety requirements amount to a "statute, regulation or policy [that] specifically prescribes a course of action for an employee to follow" *Berkovitz*, 486 U.S. 531, 536 (1988). While is clear that the TSA is responsible for ensuring the safety of airport passengers traveling through its security checkpoints,[4] it is not clear that there is a specific policy governing the precise flooring type, maintenance, or configuration prescribed for travelers navigating through without their shoes. As such, this Court concludes that the governmental action or inaction at play in this case was of a discretionary nature.

This Court finds *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997) instructive on how to best frame this stage of the analysis. In *Gotha*, the complaint centered on the government's failure to install a stairway, railing, and proper lighting on a steep footpath at a U.S. Navy facility. The Third Circuit agreed with the District Court that there was no government regulation directing the agency's conduct. Finding that the governmental action (or

---

[4] The TSA is granted statutory authority to conduct routine security screenings for air travel in the United States. 49 U.S.C. §§ 114(d)-(f). Congress has also entrusted TSA to "inspect, maintain, and test security facilities, equipment, and systems." *Id.* § 114(f)(9).

lack thereof) was discretionary, the Court held that the agency's action went more to the issue of negligence rather than whether the issue of policy discretion was implicated.[5] Even if the challenged Government conduct does involve an element of discretion, the discretionary exception will not shield the Government unless its conduct was sufficiently rooted in considerations of public policy.

> **B. The everyday safety of shoeless airline passengers traveling through TSA security checkpoints at PHL does not concern the sort of policy considerations the FTCA was designed to shield.**

This Court next moves to the second prong of the discretionary function exception analysis, which examines whether the relevant conduct is "of the kind that the discretionary function exception was designed to shield." *S.R.P.,* 676 F.3d at 333 (quoting *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997)). To the extent federal employees commit ordinary, non-governmental torts, Section 2680(a) renders the Government as accountable as any other tortfeasor. *Indian Towing Co. v. United States,* 350 U.S. 61, 68–69 (1955).

The Third Circuit has held that the discretionary function exception does not apply where the Government is aware of a specific risk of harm, and eliminating the danger would not implicate policy but would involve only garden-variety remedial measures. *S.R.P.,* 676 F.3d at 340. Garden-variety remedial measures are "basic steps to alleviate specific safety concerns." *Id.* at 338. In those instances, "the Government's conduct is analogous to that of a private citizen

---

[5] See also *Menkin*, 99 F. Supp at 581 (finding no specific "statute, regulation, or policy governing how TSA is to conduct its security procedures in the case of an air traveler who uses a cane."); *S.R.P.*, 676 F.3d at 332 (National Park Service's decision not to post warnings regarding the danger of a barracuda attack was discretionary and involved an element of judgment or choice).

who fails to take appropriate action to ensure the safety of a visitor on his or her property, and thus no broad public policy concerns are implicated." *Id.*

The *Gotha* Court rejected a lower court's conclusion that policy considerations were implicated in the Navy's failure to install simple safeguards along a footpath. 115 F.3d 176 at 181. The safety of the footpath was not sufficiently related to national security or the Navy's budget as the government contended. According to the Court, the matter was "not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." *Id.* The Third Circuit cautioned that "[i]t is clear that if the word 'discretionary' is given a broad construction, it could almost completely nullify the goal of the Act." *Id.* at 179 (internal citation omitted).

"[S]usceptibility [to policy] analysis is not a toothless standard that the government can satisfy merely by associating a decision with a regulatory concern." *Cestonaro v. United States,* 211 F.3d 749 at 757 (3d Cir.2000). In *Cestonaro,* a man vacationing in St. Croix with his family was shot and killed in an unlit parking lot controlled by the National Park Service ("NPS"). Reversing a district court's ruling, the Court found that failure to provide adequate lighting and warning signs was not sufficiently rooted in the social, economic, or political goals of maintaining a historic site. *Id.* at 757. The NPS had been aware of crimes committed in the area, but declined to take further action to deter visitors from parking at the lot overnight. The Court rejected NPS's argument that the decision not to provide proper lighting or post warnings served its policy goal of preserving the historical appearance of the area. The discretionary function exception did not apply because there was no "rational nexus" between the NPS's inaction and

its stated discretionary function of balancing concerns for historic preservation with visitor safety. *Id.* at 759.

Conversely, the Third Circuit held that NPS was immunized for its decision not to post warning signs regarding the dangers of a shoreline barracuda attack for shallow water bathers on Buck Island in the Virgin Islands. *S.R.P.,* 676 F.3d at 332. In doing so, however, the Court also considered the implications of an overly broad construction of the discretionary function exception, warning that this could frustrate the objective of the FTCA. The facts in *S.R.P.* showed that barracuda attacks were exceedingly rare, but NPS nevertheless warned visitors in a brochure and on signs across the island to treat barracudas with caution. The plaintiff was therefore arguing that the government was liable for not posting *enough* signage to visitors on the shoreline. *Id.* at 334.

Analyzing the second prong, the Court found that NPS's decision not to post additional signs on the shoreline regarding barracudas was "susceptible to policy analysis" because it involved balancing visitor safety with overloading visitors with warnings. In reaching its decision that the government's inaction involved the type of discretion shielded by the discretionary function exception, the Court analyzed whether: (1) NPS had knowledge of the specific risk of a shoreline barracuda attack; and (2) whether eliminating this risk would involve garden-variety type measures. *Id.* at 336. The court took account of the "virtually unlimited natural hazards" present on Buck Island and concluded that NPS made "a policy determination" about which how to best advise visitors. This policy determination was "directly related to the NPS's mission of preserving national parks". *Id.* at 336-337. The Court concluded that this was "precisely the type of policy choice" that judges are prohibited from second-guessing under the discretionary function exception.

Other courts have similarly found that failures to warn visitors of known hazards are not covered by the discretionary function exception where there is an insufficient nexus between the policy determination and the decision at issue. "[W]here the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees." *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir. 1986). In *Summers v. United States*, 905 F.2d 1212 (9th Cir. 1990), plaintiffs sued the NPS under the FTCA for its failure to warn barefoot beachgoers about hot coals on park beaches. Though the decision was one involving discretion under the first prong of the discretionary function test, the court found that it resembled more a departure from the safety considerations established in the Service's policies than a mistaken judgment in a matter clearly involving choices among political, economic, and social factors. *Id.* at 1216. Given that NPS did not even consider the danger to visitors from the hot coals, policy concerns "played no part in the formulation of the changed Park Service policy on fire rings." *Id.* at 1216. See also *Cope v. Scott*, 45 F.3d 445, 451 (D.C.Cir. 1995) (discretionary function exception did not protect government's decisions with respect to how and where to post signs warning of slippery road conditions).

As the court pointed out in *Menkin*, cases involving negligence claims at United States post offices provides further guidance for this Court's analysis. For instance, in *American Exchange Bank of Madison, Wisconsin v. United States,* 257 F.2d 938 (7th Cir.1958), the court concluded that although government employees exercised discretion in deciding whether and where a post-office building should be constructed, the question of whether a handrail should be installed as a safety measure on wide stone steps leading to an entrance of the building involved operational level action, and was therefore not a discretionary function.

This Court finds that the discretionary decision regarding the TSA checkpoint flooring does not implicate the sort of policy considerations the FTCA was designed to shield. Waiving sovereign immunity in this type of run-of-the-mill slip and fall accident at airport security does nothing to handicap the TSA' national security mission of protecting passengers from terrorism. As was the Third Circuit's conclusion in *Gotha,* the TSA's failure to implement simple safeguards at security checkpoints in this matter is more a product of inaction rather than that of a thoughtful balancing of policy considerations. The *Gotha* court reasoned that the Navy was not entitled to the protection of the discretionary function exception because the government failed to articulate a public policy rationale—military, social or economic—that factored into its decision not to rebuild the stairway or install a handrail. Exposing the TSA to liability for the condition of its flooring for shoeless airline passengers does not hinder its core mission any more than holding the Government accountable for a dangerous footpath at a Naval base, or hazardous steps at a United States Post Office, or an unsafe parking lot at a national historic site. The case before this Court implicates the very sort of garden-variety tort Congress was contemplating when it enacted the FTCA.

The TSA is aware that the terrazzo flooring at PHL presents a slipping hazard for travelers navigating the security checkpoint in their socks. Despite its knowledge of that risk, the TSA has chosen not to take any "garden-variety remedial steps" to address the problem. *S.R.P.,* 676 F.3d at 338. There were no efforts to make the flooring slip-resistant and no signage warning passengers of the slippery condition. There are disputed facts surrounding the extent of efforts made to inspect and maintain the premises to ensure that the floor was not slippery for the hundreds of air traveler required to take their shoes off every day. Nothing was done to correct the condition of the flooring after multiple slip and fall accidents and close calls. Passengers

should be able to expect that if they are being required to remove their shoes in order to travel, the flooring condition would be appropriate for people walking in their socks.

The TSA contends that the arrangement of the mats at the checkpoints helps to provide visual cues for passengers and that additional mats would cause confusion. It further argues that the anti-slip mats are more difficult to clean and can deteriorate over time. These proposed policy considerations are completely unrelated to the TSA's core mission of protecting airline travelers from terrorism. Moreover, the need to provide visual cues for passengers is completely compatible with the duty to maintain safe flooring conditions. The concern over possible deterioration of mats may demand some risk assessment but such a weighing of options does not implicate the TSA's national security objectives. There are myriad ways of ensuring superior security checkpoint safety, but instead the TSA has chosen to do nothing. The TSA is aware of the dangers associated with slippery flooring conditions for shoeless passengers at PHL. The Government is apparently unfazed by the number of accidents and near accidents, opting instead to insist on the rarity of such an event.

Although most acts of federal employees involve some element of discretion, the exercise of choice alone is not sufficient to qualify for the protection of the discretionary function exception. Only those acts which stem from the exercise of judgment grounded in concerns of public policy are immunized as discretionary functions. This Court is not convinced that the TSA in fact engaged in the sort of balancing of policy considerations Congress was considering in creating discretionary function carveout. This case is not akin to the NPS cases where the Park Service was clearly balancing various policies in deciding how and when to provide for visitor safety. The enforcement of negligence liability for this type of tort will do nothing to second-guess policymakers or infringe on the TSA's core mission.

Therefore, this Court concludes that we have subject matter jurisdiction over Ms. Allen-Fillmore's claim. The discretionary function exception does not shield the Government from possible negligence liability in this case.

IV.     **SUMMARY JUDGMENT**

We now turn briefly to the Government's request for summary judgment. The Government argues it is entitled to summary judgment because: (1) TSA is not the possessor of land where the security checkpoint exists; (2) even if it were, Plaintiff has failed to provide evidence of a condition presenting an unreasonable risk of harm to invitees; and finally (3) the flooring condition was known and obvious.

Under Pennsylvania law, a claim for negligence contains four elements: "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." Bowman v. Wal-Mart Stores East, LP, No. 14-3182, 2015 WL 568570, at *3 (E.D. Pa. Feb 10, 2015) (citing Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005)).

The question over who possessed the land covering the TSA security checkpoint presents a genuine issue of material fact best left to a jury. While it is the City of Philadelphia that owns the Philadelphia International Airport, the City argues that the TSA leased the security checkpoint location. The Plaintiff and City have presented sufficient evidence at this stage from which a reasonable jury could conclude that the TSA was the possessor of land for purposes of a negligence claim.

Drawing all inferences in favor of Ms. Allen-Fillmore, the non-movant, this Court finds that genuine issues of material fact remain with respect to a myriad of issues concerning liability in this case, including but not limited to: who possessed the land covering the checkpoint; whether the cleanliness of the flooring contributed to the slippery condition of the terrazzo; who was responsible for cleaning the security checkpoint areas; whether the cleaning and maintenance of the terrazzo flooring complied with pertinent building regulations on slip resistance; how often the terrazzo was cleaned; and whether the slippery condition of the terrazzo flooring was known and obvious. There cannot be any serious dispute that the floor where Plaintiff fell was slippery. However, the reasons behind the slippery condition and who is responsible are certainly in dispute.

V. THE CITY'S CROSSCLAIM

For all the reasons previously stated, this Court will also deny the Government's motion to dismiss and motion for summary judgment with regard to the City of Philadelphia's derivative cross-claim.

An appropriate order shall follow.

BY THE COURT:

_____

Hon. Mia R. Perez