IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE ALLEN-FILLMORE | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | NO. 22-1610 |
| UNITED STATES OF AMERCA, | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendants. | : | |

**MEMORANDUM**

Perez, M.                                                                                              September 15, 2023

Presently before the Court is a Motion for Summary Judgment (ECF No. 71) filed by Defendant Byrd Enterprises Unlimited, Inc. (hereinafter referred to as "Byrd"). Plaintiff Jacqueline Allen-Fillmore has brought this negligence action against Byrd, the City of Philadelphia, and the United States of America for personal injuries she sustained when she slipped and fell passing through a TSA security checkpoint at the Philadelphia International Airport ("PHL"). Byrd was joined as a Defendant by Plaintiff in this matter after the completion of written discovery, depositions of the parties, and the submission of liability and expert reports.

This Court has previously denied the other two Defendant's motions for dismissal and summary judgment. Byrd now asks this Court to enter summary judgment in its favor. This Court made findings of fact in its Memorandum Opinions regarding Defendant United States of America (ECF No. 67) and Defendant City of Philadelphia (ECF No. 69). This Court finds that, viewing the facts in a light most favorable to the Plaintiff, the record fails to present any genuine issue of material fact concerning Defendant Byrd's liability. Having reviewed Plaintiff's

Response in Opposition (ECF No. 74) as well as for the reasons set forth below and for good cause shown, Defendant's motion is granted.

## I.      Factual Background[1]

This Court previously made the following findings of fact with respect to the accident and injury Plaintiff suffered:

> On January 15, 2021, Plaintiff Jacqueline Allen-Fillmore traveled to the Philadelphia International Airport ("PHL") for a flight to North Carolina to visit her family. As is the case for most airline passengers, Ms. Allen-Fillmore was instructed to remove her shoes before passing through the security checkpoint administered by the Transportation Security Administration ("TSA"). She complied with all directives and instructions provided by TSA personnel working that day. The TSA checkpoint was set up with rubber mats configured in a straight line through the area where passengers proceed through the body scanner. The remaining floor at the checkpoint consists of the same terrazzo flooring that is installed throughout much of the airport. There are no mats leading from the body scanner to the x-ray belt where shoeless travelers are meant to retrieve their shoes and other belongings.
>
> After placing her belongings on the x-ray scanning belt, Ms. Allen-Fillmore proceeded through the checkpoint area wearing her socks. The checkpoint did not display any cautionary signs warning of slippery conditions on the terrazzo flooring for shoeless passengers. Plaintiff continued on to the body scanning machine, walking in her socks on the rubber mats without any problem. Video surveillance of the incident shows Plaintiff slip the moment she stepped off the mat onto the terrazzo flooring to retrieve her belongings. Her left foot slid across the slippery floor, and she fell, breaking her knee. Plaintiff underwent surgery, which required the placement of permanent hardware in her leg.

ECF No. 67 at 3. With respect to the relationship between the TSA and the City, this Court established:

> The City, which is undoubtedly the owner of all airport property at PHL, provides the TSA with a delineated area in which to conduct security screenings of airline passengers. The Agreement between the City and the TSA does not make clear that either party is the sole possessor of the checkpoint area. It is clear to this Court that the TSA exerts tremendous control over when the City's custodial staff can enter the checkpoint areas. The City's access is largely restricted during the TSA's operating hours, unless the City

---

[1] As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. *Young v. Martin*, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

> is summoned for cleaning or maintenance. However, the facts also demonstrate that outside of TSA operating hours, the City maintained possession and control of the flooring even within the checkpoint grounds.

ECF No. 69 at 2. During the global coronavirus pandemic, Defendant United States of America contracted with Defendant Byrd for "COVID-19 Cleaning and Sanitization Services" at the Philadelphia International Airport. See ECF No. 71-5 (Contract between Byrd and TSA at Exh. D of Byrd's Motion ((hereinafter referred to as "the Contract")). Byrd was specifically tasked with cleaning high passenger contact touch points, such as bins, surfaces, and floors when the TSA checkpoint was closed to the public. The TSA was responsible for periodic inspection of Byrd's covid mitigation services. The TSA's "Enhanced Cleaning Requirements Checklist" instructs that cleaning services conform to "the [CDC's] guidance for cleaning and disinfecting facilities" by using "EPA's Registered Antimicrobial Products for Use Against Novel Coronavirus SARS-CoV-2." ECF 71-5 at 37.

The Contract was in effect between October of 2020 through March of 2021. As such, it was active during the time of Plaintiff's slip-and-fall accident at PHL Checkpoint D on January 15, 2021. Pursuant to the terms of the Contract, Byrd was only expected to perform its covid mitigation cleaning services between the hours of 9:30 PM and 3:45 AM, outside the airport's active hours of operation. See ECF 71-5; Plaintiff's Joinder Civil Action Complaint at ECF No. 35.

## II.     Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A factual dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." The nonmoving party must point to specific affirmative evidence in the record, rather than rely upon conclusory or vague allegations or statements. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548 (1986). At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. *Young v. Martin*, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

To establish a cause of action in negligence, a plaintiff must establish the presence of a duty, a breach of that duty by the defendant, and that the breach of duty was the proximate cause of plaintiff's harm. *See Martins v. Evans*, 711 A.2d 458, 461 (Pa. 1998). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be "genuine," i.e. the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *See Compton v. Nat'l League of Professional Baseball Clubs*, 995 F. Supp. 554, 561 n. 14 (E.D. Pa. 1998).

**III.   Discussion**

Under Pennsylvania law, a claim for negligence requires proof of four elements:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

*Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 435 (E.D. Pa. 2011) (Robreno, J.) (citing *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005)).

Plaintiff argues that Byrd's duty of care in this case arises out of the contract between Byrd and the TSA to provide covid mitigation cleaning services at PHL. Plaintiff further argues that Byrd owed Ms. Allen-Fillmore "a duty to perform effective cleaning of the terrazzo flooring and that it cannot rebut the Plaintiff's assertion that the floors were dusty due, in part, to Byrd's negligence." ECF No. 74 at 10 (Pl. Opposition Brief). Plaintiff goes on to say, "Byrd owed a contractual duty to TSA to sweep and mop and *presumably* maintain the terrazzo flooring at TSA checkpoints at PHL during the overnight hours *when the checkpoint was closed* . . . Airline passengers like Ms. Fillmore were foreseeable and anticipated third party beneficiaries of this contract. In fact, the purpose of the contract was to make air travel safer for passengers and hence was intended for Ms. Fillmore's benefit. . . Plaintiff fell because she encountered slippery terrazzo flooring while in socks in a rigidly controlled situation and in a rigidly defined space." *Id.* at 10 (emphasis added).

Section 324A – Liability to Third Person for Negligent Performance of Undertaking – of the Restatement (Second) of Torts states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> 
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> 
> (b) he has undertaken to perform a duty owed by the other to the third person, or

>  (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1977). Pennsylvania has adopted Section 324A. *See Cantwell v. Allegheny County*, 483 A.2d 1350, 1353 (1984).

"Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time ...." *Morena v. South Hills Health System,* 501 Pa. 634, 642, 462 A.2d 680, 684 (1983). Where "the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions." *Zanine v. Gallagher,* 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985). In the Section 324A context, the Pennsylvania Supreme Court has stated:

> Before a person may be subject to liability for failing to act in a given situation, it must be established that the person has a duty to act; if no care is due, it is meaningless to assert that a person failed to act with due care. Certain relations between parties may give rise to such a duty. Although each person may be said to have a relationship with the world at large that creates a duty to act where his own conduct places others in peril, Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act.

*Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1248 (Pa. 1989).

Pursuant Section 324A, a defendant must have undertaken to perform a specific task, and must have performed that "undertaking" negligently. See *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982) (stating that Section 324A requires that "the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently"); *Blessing v. United States*, 447 F. Supp. 1160, 1188-89 (E.D. Pa. 1978). In cases where a defendant was contracted by a property owner to perform services on the premises, "[t]he extent of the duty and the subsequent questions of breach and causation are 'measured by the nature and

scope of [the] contractual undertaking.' *Casselbury v. Am. Food Serv.*, 30 A.3d 510 (Pa. Super. Ct. 2011) (citing *Evans v. Otis Elevator Co.,* 168 A.2d 573, 576 (Pa. 1961)).

The nature of the contract is central to the question of whether it gives rise to a duty that extends to third party beneficiaries. In *Reeser v. NGK North American, Inc.*, the Pennsylvania Superior Court held that an engineering firm hired to perform testing of Beryllium levels at a plant had no duty to warn residents of the levels it detected. The Court affirmed the trial court's grant of summary judgment, finding there was insufficient evidence that defendant undertook a duty to perform remedial action. *Reeser v. NGK North American, Inc.*, 14 A.3d 896 (Pa. Super. 2011). In contrast, *Casselbury* held that a duty was owed by a food company to an industrial plant worker who slipped on cooking oil leaking out of a dumpster, where there was specific evidence of a contractual duty to safely dispose of cooking oil. *Id.*

Plaintiff has not come forward with any evidence that establishes that Byrd owed and breached a duty of care to Ms. Allen-Fillmore. It is undisputed by the parties that Byrd was not responsible for maintaining or cleaning the checkpoint area at the time of Ms. Allen-Fillmore's fall. There is no language in the contract that obligates Byrd to provide cleaning services during the TSA's hours of operation. The Contract between Byrd and the TSA makes clear that the screening checkpoints would only be cleaned outside TSA's hours of operation when they were not managing passenger security.

The TSA, much like all government agencies and business owners at the time of the pandemic, undertook measures to make their facilities as sanitary as possible due to the health risks posed by Covid-19. Enhanced sanitization protocols for international air travel during the pandemic informs the "nature of the [contractual relationship]" between Byrd and TSA. There is nothing in the record to suggest that Byrd supplanted the cleaning services at screening

checkpoints, but rather, Byrd was *supplementing* the baseline cleaning that had always been provided by the City's custodial services. This Court acknowledges that its prior decisions have left open the question of whether the cleanliness of the flooring contributed to the slippery nature of the terrazzo for trial. However, this area of disputed fact does not implicate any duty owed by Byrd to third party airline passengers being screened by TSA during its normal business hours.

Just as there is no language in the Contract that obligates Byrd to provide cleaning services during the TSA's hours of operation, there is similarly no language regarding floor inspection and maintenance of the terrazzo. Byrd did not undertake any specific duty to ensure that the terrazzo flooring at the Philadelphia airport was slip-resistant and safe for shoeless passengers. The specific nature of the contract here was to provide enhanced Covid-19 cleaning services to help contain and prevent the spread of coronavirus at international airports. Therefore, this Court cannot find that Byrd owed a specific duty to third party airline passengers regarding the slippery condition of the terrazzo flooring for those navigating security checkpoints during normal TSA operating hours in their socks.

There is an insufficient amount of evidence to establish the requisite elements of a negligence claim against Byrd, such that no reasonable factfinder could find in favor of Plaintiff at trial. Because Ms. Allen-Fillmore has not pointed to evidence that would enable it to find that Byrd breached a duty it owed to airline passengers Checkpoint D at PHL, this Court will grant Defendant's motion for summary judgment. An appropriate order will follow.

BY THE COURT:

_____
Hon. Mia R. Perez